# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : CHAPTER 11 |
| | : |
| **SUMMIT METALS, INC,** | : Case No. 98-02870 (KJC) |
| Debtor | : |
| | : |
| | : |
| **AMBROSE M. RICHARDSON,** | : Adv. Pro. No. 11-51772 (KJC) |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **FRANCIS MONACO, WOMBLE** | : |
| **CARLYLE SANDRIDGE & RICE,** | : |
| **PLLC, WOLFBLOCK, LLP and** | : |
| **RICHARD E. GRAY,** | : |
| | : |
| Defendants | : |
| | : |

## <u>OPINION</u>

**BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the Defendants' motions to dismiss the above-captioned adversary

proceeding with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure, and for imposition of attorneys' fees, costs, and expenses.[1] For the reasons set forth

---

[1] The Court may take judicial notice of its own docket. Fed. R. Evid. 201, made applicable by Fed. R. Bankr. P. 9017. As described in the Procedural History, *infra.*, the above-captioned adversary proceeding was removed from the Supreme Court of the State of New York to  the United States District Court for the Easter District of New York (Brooklyn) (the "New York District Court").  The New York District Court transferred the case to the United States District Court for the District of Delaware (the "Delaware District Court") which, in turn, referred the matter to this Court.

 Citations to documents and, if applicable, attached exhibits, docketed in the New York District Court (Case no. 11-00097) are cited as "D.I. (EDNY) # at  Ex. [letter or number]."

 Citations to documents and, if applicable, attached exhibits, docketed in the Delaware District Court  (Case No. 11-215) are cited as "D.I. D. Del. # at Ex. [letter or number]."

 Citations to documents and, if applicable, attached exhibits, docketed in this Court  are cited as "D.I. Bankr. Adv. # at Ex. [letter or number]".

below, the motions to dismiss with prejudice will be granted for lack of subject matter

jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted.

Whether attorneys' fees, costs, and expenses should be imposed will be addressed at a later date,

as provided in the accompanying Order.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157

(a) and 1334(b). *See Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376-77

(1940) (holding that a federal court has the authority to determine whether it has subject matter

jurisdiction over a proceeding). Venue is proper under 28 U.S.C. § 1409. This is a core

proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A).

## BACKGROUND

### I.   The Parties

Plaintiff Ambrose M. Richardson ("Richardson") is an attorney and a creditor in the main

bankruptcy case, *In re Summit Metals, Inc.*, Case No. 98-02870.  He was also the chairman of the

Official Committee of Unsecured Creditors (the "Committee").  Richardson is representing

himself in this proceeding.

Defendant Francis A. Monaco ("Monaco") is an attorney with Womble Carlyle

Sandridge & Rice, PLLC and has served as the bankruptcy trustee (the "Trustee") for Summit

Metals, Inc. since 2004.

Defendant Womble Carlyle Sandridge & Rice, PLLC ("Womble Carlyle") has served as

counsel to the Trustee since 2007.

---

Citations to documents and, if applicable, attached exhibits, docketed in the main bankruptcy case for
Summit Metals, Inc., filed in this Court as Case No. 98-02870, are cited herein as "D.I. # at Ex. [letter or number]."

Defendant Wolf Block Schorr & Solis-Cohen, LLP ("WolfBlock") served as counsel to the Committee from 1999 to 2007.

## II.  Procedural History

On August 9, 2010, Richardson filed a summons with notice in the Supreme Court of the State of New York, County of Queens, naming WolfBlock as defendant. A second summons naming Monaco, Womble Carlyle, and Gray as defendants, in addition to WolfBlock, was served on Monaco, Womble Carlyle, and WolfBlock on December 8, 2010. Defendants removed the proceeding to the District Court for the Eastern District of New York on January 6, 2011, pursuant to 28 U.S.C. §§ 1442 and 1452 (the "Richardson Action").   On January 13, 2011, the Defendants filed motions in the New York District Court to transfer venue (D.I. (EDNY) #6, 7, 8) and to dismiss the Richardson Action (D.I. (EDNY) # 9, 10, 11).

Meanwhile, on January 6, 2011, defendants Monaco and Womble Carlyle (the "Trustee Defendants") filed in this Court a *Motion to Enforce the Provisions of the Order Confirming Liquidating Plan, to Enforce the Provisions of the Confirmed Plan, to Enforce the Barton Doctrine, and for Other Relief* (the "Motion to Enforce"). D.I. # 918.

On January 24, 2011, Richardson filed an objection to the Trustee Defendants' Motion to Enforce. D.I. # 932. On January 31, 2011, WolfBlock joined the Trustee Defendants' Motion to Enforce. D.I. # 933. On February 8, 2011, in response to WolfBlock's joinder, Richardson filed another objection, which was also styled as a cross motion for leave to proceed under the *Barton* doctrine. D.I. # 938.

On March 25, 2011, the Trustee Defendants moved to impose sanctions against Richardson pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927. D.I. # 970. WolfBlock has also moved for sanctions. D.I. # 993.  (jointly, the "Motions for Sanctions").

Defendants' motion to transfer venue to the Delaware District Court was granted on March 9, 2011, and the Delaware District Court then referred the proceeding to this Court by an order signed by Judge Leonard P. Stark on April 7, 2011. Consideration of the Motion to Enforce and Motions for Sanctions was deferred until disposition of the Defendants' motions to dismiss. [2] Order Scheduling Oral Argument, D.I. # 1001. Oral arguments on the Motions to Dismiss were held on June 30, 2011.

### III. Factual History

   A. *The Summit Bankruptcy and the 2004 Judgment Against Gray*[3]

Summit Metals, Inc. ("Summit") is a Delaware shell company that is the successor of The Chariot Group, Inc. ("Chariot"), a public company headquartered in New York. Chariot was in the business of managing and acquiring window and door companies. Compl. ¶ 55. In 1995, Gray, Chariot's majority stockholder, "embarked upon a scheme to defraud the creditors and stockholders of Chariot, by transferring Chariot's assets – then valued at $17 million – to himself and leaving Chariot's creditors and stockholders holding worthless pieces of paper." Compl. ¶ 1.

Energy Saving Products ("ESP") and B.F. Rich, both window and door manufacturers, were Chariot's only operating subsidiaries. Chariot acquired 92% of ESP's outstanding stock in 1988. B.F. Rich became a subsidiary of ESP in 1990 when ESP acquired 100% interest in B.F. Rich. Compl. ¶¶ 20-21.

---

[2] The Defendants' motions to dismiss, originally filed in the New York District Court, are entitled (i) the Motion of Defendants Francis A. Monaco and Womble Carlyle Sandridge & Rice PLLC to dismiss the Complaint with Prejudice and for Imposition of Attorneys Fees, Costs and Expenses (D.I. (EDNY) 9) and (ii) Motion of WolfBlock LLP to Dismiss Complaint with Prejudice and for Imposition of Attorney Fees (D.I. (EDNY) 10), and are referred to jointly herein as the "Motions to Dismiss".

[3] Additional factual background information concerning the main Summit bankruptcy proceeding can be found in *In re Summit Metals, Inc.*, 379 B.R. 40 (Bankr. D. Del. 2007) and former District Judge Jordan's Post–Trial Findings of Fact and Conclusions of Law resolving *Summit Metals, Inc. v. Gray (In re Summit Metals, Inc.)*, Civ. A. 00-387(KAJ), 2004 WL 1812700 (D. Del. Aug. 6, 2004) ("*Summit v. Gray*"). Judge Jordan now sits on the Court of Appeals for the Third Circuit.

Gray shut down Chariot in 1995 by selling Chariot's 92% stake in ESP and merging Chariot into Summit. Compl. ¶ 55. At the time of sale, the ESP stock was worth at least $15 million. Compl. ¶ 23. "In exchange for its ESP stock, Gray arranged for Chariot to receive a $15 million note ("Note") from Hallowell…Gray owns and controls Hallowell and he signed the Hallowell Note as 'Chairman' of that company. Hallowell had no assets, income, operations, employees or ability to repay the Note. Gray…knew that Hallowell could never pay the Note and, in another proceeding, testified that Hallowell 'ha[d] a negative net worth.' The Note was the only consideration Chariot received in exchange for ESP and B.F. Rich." Compl. ¶24.

On December 30, 1998, Summit filed a voluntary chapter 11 petition in this Court. At the time of filing, Gray was the sole shareholder and director of Summit, and Summit had only intangible assets in the form of claims against Gray. Compl. ¶ 64.

The U.S. Trustee formed the Committee on March 4, 1999, and elected Richardson as its Chairman. *Summit Metals*, 379 B.R. 40, 47. Richardson was Gray's former business partner and an officer of Chariot and its subsidiaries.

This Court approved the retention of WolfBlock as counsel for the Committee on August 13, 1999. D.I. # 145. On October 29, 1999, the Committee initiated an adversary proceeding against Gray and the "Gray entities" in this Court. Compl. ¶ 65.

In April 2000, the Delaware District Court withdrew the reference of the Committee's adversary proceeding. *Summit v. Gray*, 2004 WL 1812700, at *1. Following three years of pre-trial activity, Judge Kent A. Jordan of the Delaware District Court held a bench trial on January 13, 2004. *Id.* at *2. Judge Jordan issued his post-trial findings of fact and conclusions of law on August 6, 2004, and entered a $40 million judgment against Gray (the "Gray Judgment"). *Id.* at *1; Compl. ¶ 83. Part of the relief granted by Judge Jordan gave Summit controlling interests in

the capital stock of Riverside Millwork Co., Inc. ("Rivco") and Jenkins Manufacturing, Inc. ("Jenkins"). Compl. ¶ 83.

By Order dated November 18, 2004, Judge Louis Kornreich confirmed the United States Trustee's appointment of Monaco as the Debtor's Chapter 11 Trustee. D.I. # 374.

*B. The Sales of Rivco and Jenkins*

On October 12, 2005, Judge Randolph Baxter held a hearing on the Trustee's motion to approve the sale of Rivco to RHC Acquisition, Inc. ("RHC"). D.I. # 539.[4] Richardson objected to the sale, D.I. #525, and made an oral offer during his testimony for an amount $400,000 greater than the offer under consideration . Judge Baxter approved the Trustee's motion to accept the RHC bid, and overruled all objections. D.I. # 538. In a memorandum opinion, the Court referred to the sale as "a prudent and favorable opportunity." D.I. # 537, 6 ("Rivco Sale Opinion"). Unlike the RHC offer, which was unconditional and "undisputedly, a firm financial commitment," Rivco Sale Opinion, 1, Richardson's offer was "unwritten and possessed no firm financial commitment. This was unrefuted." Rivco Sale Opinion, 2. On November 3, 2005, the day the Rule 6004(g) 10-day stay expired,[5] Richardson filed an appeal of the Rivco sale order, D.I. # 542, and a motion to stay the sale pending appeal, D.I. # 543. The Trustee, Rivco, and RHC closed the sale transaction the next day, November 4, 2005. Richardson's motion to reverse the sale order and undo the sale transaction was dismissed by the Delaware District Court. D.I. # 368, 487, 511, 517, 558, 977. *See Richardson v. Monaco (In re Summit Metals, Inc.)*, Case No. 05-cv-876-KAJ (D.Del.).

---

[4] Judges Kornreich and Baxter both served this Court as visiting judges. Assignment of the main case was made to the undersigned on December 20, 2005. D.I. # 568.

[5] Since that time, Fed.R.Bankr.P. 6004(g) was redesignated as Fed.R.Bankr.P. 6004(h) (Advisory Committee Note (2008)), and the 10-day stay period became a 14-day stay period (Advisory Committee Note (2009)).

On December 14, 2005, Judge Baxter held a hearing on the Trustee's motion to approve

the sale of Jenkins Manufacturing Co., D.I. # 550, and entered an order approving the sale, D.I. #

562. Richardson's objection was overruled. D.I. # 554.

### C. The Confirmed Plan

By Order dated August 9, 2007 , D.I. #772 (the "Confirmation Order"), this Court

confirmed the Second Amended Liquidating Plan of the Chapter 11 Trustee for Summit Metals,

Inc., D.I. 760 (the "Confirmed Plan").  The Confirmed Plan provided for the liquidation of

Summit Metals' assets, released pre-confirmation claims, enjoined actions based on a pre-

confirmation claims, and reserved "exclusive jurisdiction of all matters arising out of, arising in

or related to, the Chapter 11 Case." D.I. # 772, ¶13.[6]  Womble Carlyle was approved as counsel

for the Trustee by Court order on September 10, 2007. D.I. # 784.

### D. The Gray Settlement Agreement

When the Trustee became aware in 2008 that the Rich Realty assets had been transferred

to Gray's children, he attempted to have the Gray Judgment modified in order to pursue those

assets.[7] The Delaware District Court denied the Trustee's motion to pursue litigation against

Rich Realty for being untimely and without grounds for relief pursuant to Rule 60(b)(6) of the

Federal Rules of Civil Procedure, since there was no evidence that the 1997 transaction in

question was not discoverable from the evidence available at the time of the 2004 trial. The

Court further reasoned that Summit had the motive and opportunity to uncover the information

during the three years of litigation.

---

[6] See Discussion, infra, for the relevant textual provisions of the Confirmation Order and Confirmed Plan.
[7] Rich Realty and B.F. Rich  (the "Gray entities") had been dismissed from the Delaware District Court case.
Summit v. Gray, 2004 WL 1812700, at *1, n.1 ("Defendant B.F. Rich has been dismissed as a defendant in this case.
Summit acknowledged at trial that it has not sought any relief from defendant Rich Realty because 'there's nothing
that indicates ... [that] Mr. Richard Gray owns an interest in Rich Realty.... Based on that, we are willing to go
forward and stipulate that [Rich Realty Inc.] be removed.'") (quoting January 13, 2004 Trial Transcript at 74-75.)

Gray also filed a Rule 60(b) motion to amend the $40 million judgment, which motion was denied as "frivolous and abusive of the judicial process." *In re Summit Metals, Inc.*, Civ. No. 00-387-SLR, 2008 WL 853468, at *2 (D. Del. March 31, 2008). Gray appealed to the U.S. Court of Appeals for the Third Circuit. Following the filing of the appeal, the Trustee and Gray engaged in negotiations regarding the $40 million judgment and came to an agreement (the "Gray Settlement Agreement"). D.I. # 840 at Ex. A. Under the Agreement, which the Trustee "wish[ed] to enter…among other reasons, to avoid the possibility that the Appeal of the Gray Rule 60(b) Motion [would] be upheld," Gray Settlement Agreement ¶ K, Gray would dismiss his appeal and the Trustee would accept Gray's payment of $100,000 in full and complete satisfaction and discharge of the Gray Judgment. D.I. # 840. The Trustee filed a Rule 9019 motion in this Court to approve the Gray Settlement Agreement, D.I. # 840, to which Richardson filed an objection on January 7, 2009. D.I. # 847. On March 4, 2009, this Court held an evidentiary hearing on the Gray Settlement Agreement and approved the settlement. D.I. # 874. Richardson's objection was overruled. Gray transferred $100,000 to the Trustee in July 2009, thereby substantially consummating the Agreement. Richardson did not seek a stay pending appeal, but filed an appeal of this Court's March 4, 2009 Order in the Delaware District Court. The Delaware District Court denied Richardson's appeal and affirmed the March 4, 2009 Order of this Court. *In re Summit Metals, Inc.*, Civ. No. 09–256–SLR, 2011 WL 1085680 (D. Del., March 23, 2011). The Third Circuit then affirmed the District Court in a "not precedential" opinion. *In re Summit Metals, Inc.*, No. 11–2112, 2012 WL 1302597 (3d Cir. Apr. 17, 2012).

## CAUSES OF ACTION

The Complaint in the Richardson Action alleges that, pursuant to section 487 of the New York Judiciary Law,[8] WolfBlock, Monaco and Womble Carlyle are "guilty of deceit and collusion, and consented to deceit and collusion, with intent to deceive various courts, and the creditors and stockholders of Chariot/Summit" and, additionally, that WolfBlock "delayed proceedings with a view to its own gain." Complaint ¶¶ 105, 106, 110. The Complaint contains the following claims against WolfBlock:

**Count I:**  WolfBlock delayed proceedings, defaulted on motions, and allowed the transfer of the Committee's Adversary Proceeding to the District Court, where it languished for two years.

**Count II:**  WolfBlock agreed to a settlement that would have benefited itself and shortchanged the creditors and stockholders of Chariot/Summit.

**Count III:**  WolfBlock failed to pursue aggressively the claims relating to ESP.

**Count IV:**  WolfBlock failed to review information in its files relating to Rich Realty.

**Count V:**  WolfBlock failed to gain authority for or encourage claims against third parties and allowed statutes of limitation to run.

---

[8] Section 487 provides:

" An attorney or counselor who:
 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
 2. Willfully delays his client's suit with a view to his own gain; or, willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action."

N.Y. Judiciary Law § 487 (McKinney, 2012).

**Count VI:** WolfBlock failed to consult with the Committee in connection with the sale of the operating companies in order to maximize recovery – or obtain any recovery at all – for the stockholders/creditors of Chariot/Summit.

**Count VII:** WolfBlock failed to advise properly re subordination and allow creditors to seek counsel.

Complaint ¶ 107. Richardson alleges that Monaco and Womble Carlyle are subject to section 487 for the following reasons:

**Count I:** Monaco and Womble Carlyle wasted the assets of Chariot/Summit by selling its operating companies for inadequate prices, or even by selling them at all, and by charging and allowing excessive administrative expenses.

**Count II:** Monaco and Womble Carlyle agreed to excess liabilities against Chariot/Summit to government agencies.

**Count III:** Monaco and Womble Carlyle failed to investigate claims for recovery, especially against Gray's alter ego entities and third party aiders and abettors.

**Count IV:** Monaco and Womble Carlyle allowed statutes of limitation to elapse without filing timely claims.

**Count V:** Monaco and Womble Carlyle colluded with Gray to prevent suits against him.

Complaint ¶ 111.

As the Trustee Defendants and WolfBlock have put forth nearly identical arguments for dismissal of the Complaint, with only a slight variation on the issue of whether Richardson has standing to pursue claims against each Defendant, their motions will be addressed concurrently.

## DISCUSSION

Defendants argue that the Richardson Complaint should be dismissed for the following reasons:

1. The Court lacks jurisdiction over the Complaint because Richardson violated the *Barton* doctrine by bringing suit in New York State Court without the permission of this Court;

2. Section 487 of the Act is applicable only to proceedings that occurred within the territorial borders of the State of New York;

3. Defendants are entitled to judicial immunity for actions taken in their capacity as court-appointed officials;

4. Richardson lacks standing to pursue the claims;

5. The principles of res judicata and collateral estoppel bar Richardson's claims; and

6. Pursuant to the injunction and exculpation provisions in the Confirmation Order and Confirmed Plan ( including, in particular, the Mutual Release in Section 6.12 of the Confirmed Plan between the Creditors' Committee, its members, counsel and financial advisors, and the Chapter 11 Trustee and his attorneys, financial advisors, etc.), Richardson released, and is enjoined from pursuing, any claims based on pre-confirmation activities, which applies to all claims in the Complaint except those pertaining to the Gray Settlement Agreement.

Accepting all facts in the Complaint as true and construing them in the light most favorable to the Plaintiff, the Court will grant Defendants' Motions to Dismiss for the reasons given below.

## I.   Violation of the *Barton* Doctrine Warrants Dismissal for Lack of Subject Matter Jurisdiction

### A.   *Standard of Review*

The motion to dismiss for lack of subject matter jurisdiction is filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.  When a court is faced with 12(b)(1) and 12(b)(6) motions to dismiss, as a general rule, the correct procedure is to consider dismissal on the jurisdictional ground first "for the obvious reason that if the court lacks jurisdiction to hear the case then *a fortiori* it lacks jurisdiction to rule on the merits." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 895 n.22 (3d Cir. 1977).

A 12(b)(1) motion to dismiss attacks the complaint either factually or facially. "The latter concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (quoting *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)); *see also Mortensen*, 549 F.2d at 891 (explaining that a 12(b)(1) attack may be directed at "the existence of subject matter jurisdiction in fact.").

In a facial attack, the court must consider the allegations of the complaint as true. But in a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

When the issue of a court's jurisdiction and the merits of the case are intertwined, "a court may determine subject matter jurisdiction without reaching the merits, so long as the court

'demand[s] less in the way of jurisdictional proof than would be appropriate at a trial stage.'"

*Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) (quoting *Mortensen,* 549 F.2d at 891 (permitting evaluation of jurisdiction for claim under Sherman Act where merits and jurisdiction closely intertwined) ). Here, the Trustee Defendants' challenge is factual, although there is no dispute that Richardson failed to request (and receive) this Court's leave before he filed suit in the Supreme Court of the State of New York, County of Queens.

B.   The *Barton Doctrine*

Richardson did not seek this Court's leave to file his Complaint in the Supreme Court of the State of New York, County of Queens, and therefore his Complaint will be dismissed pursuant to the *Barton* doctrine. Set forth in the eponymous 1881 Supreme Court decision *Barton v. Barbour*, 104 U.S. 126 (1881), the doctrine provides that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Id.*, at 128; *see also Davis v. Gray*, 83 U.S. 203, 218 (1872) (holding that the court appointing a receiver "will not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties, or others, without [the court's] consent").[9]

The *Barton* doctrine has been imposed in "an unbroken line of cases...as a matter of federal common law." *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) (Posner, J.). Although *Barton* involved a receiver in state court, the doctrine has long been applied to the trustee in bankruptcy. The Third Circuit has recently confirmed applicability of the *Barton* doctrine in bankruptcy cases, *In re VistaCare Grp., LLC*, 678 F.3d 218 (3d Cir. 2012), holding that leave of

---

[9] *Fed. Home Loan Mortg. Corp. v. Riverside Owners Corp.* , 1991 WL 258779, *2 (S.D.N.Y. Nov. 25, 1991) indicates that *Davis v. Gray* was superceded by statute, *i.e.,* 28 U.S.C. §959, which provides an exception to *Davis v. Gray* and the *Barton* Doctrine, as discussed *infra.*

the bankruptcy court is required before a party brings an action in another forum against a trustee.

In *Vass v. Conron Bros. Co.,* 59 F.2d 969 (2d Cir.1932), Judge Learned Hand applied the *Barton* doctrine in a suit brought against a bankruptcy trustee, stating that "an action against a trustee in bankruptcy for transactions of his own, must be brought in bankruptcy court, unless it gives leave to liquidate elsewhere; it concerns the distribution of the assets as much as a claim against the bankrupt, and is justiciable only as that is." *Vass,* 59 F.2d at 971. The U.S. Court of Appeals for the Third Circuit noted that "the policies underlying the *Barton* doctrine continue to apply with full force to bankruptcy proceedings." *VistaCare,* 678 F.3d at 228. The *VistaCare* Court explained that applying *Barton* to the modern bankruptcy trustee was a logical extension of the doctrine: "A bankruptcy trustee is the 'statutory successor to the equity receiver' and'[j]ust like an equity receiver, a trustee in bankruptcy is working in effect' for the court overseeing the bankruptcy proceeding, 'administering property that has come under the court's control by virtue of the Bankruptcy Code.'" *Id.* at 229 (quoting *Linton,* 136 F.3d at 545). Other policy rationales supporting the continued applicability of the doctrine are that "a judgment against the trustee, whether ultimately satisfied out of the assets of the estate or out of the trustee's pockets, may affect the administration of the estate," *VistaCare,* 678 F.3d at 228 (citing *Beck v. Fort James Corp. (In re Crown Vantage, Inc.),* 421 F.3d 963, 972 (9th Cir. 2005)) and that "'[i]f debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, [the state] court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa.'" *VistaCare,* 678 F.3d at 228 (quoting *Linton,* 136 F.3d at 546).

The U.S. Court of Appeals for the Seventh Circuit has also noted that, if not for the *Barton* doctrine, "[a] creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor." *Linton*, 136 F.3d at 546; *see also In re marchFIRST, Inc.*, No. 08 CV 121, 2008 WL 4287634, at *2 (N.D. Ill. Sept. 12, 2008) ("The *Barton* doctrine has three main purposes: (1) to maintain the integrity of the bankruptcy court's jurisdiction; (2) to control burdensome litigation that may impede the trustee's work as an officer of the court; and (3) to allow the bankruptcy court to monitor effectively the trustee's work.").

Several other Circuits have applied the *Barton* doctrine in suits brought against the trustee or other bankruptcy court-appointed officers for acts taken in their official capacity. *See, e.g., Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (holding that "the *Barton* doctrine applies to actions against officers approved by the bankruptcy court when those officers function 'as the equivalent of court appointed officers'") (citing *Carter v. Rodgers*, 220 F.3d 1249, 1252 n.4 (11th Cir. 2000)); *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006) (holding that the *Barton* doctrine "applies to trustee's counsel as well as to trustees themselves"); *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004) (holding that claims for malfeasance or breach of fiduciary duty as trustee, such as a claim arising from the liquidation of assets, require leave of the court); *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996) (noting that courts have "requir[ed] leave of the appointing court before a suit may go forward in another court against the trustee"); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993) (holding that "as a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional

15

equivalent of a trustee, whereas here, they act at the direction of the trustee and for the purpose

of administering the estate or protecting its assets"); *Vass,* 59 F.2d at 970.

There are two exceptions to the *Barton* doctrine, neither of which is applicable here. The

first is statutory. Section 959(a) of title 28 of the United States Code provides that trustees (or

other court-appointed officers) may be sued *without* permission of the appointing court if the act

in question occurred while "carrying on business" connected with the estate. 28 U.S.C.A. §

959(a) (West 2005).  The exception is intended to allow, for example, personal injury suits

brought for accidents occurring while the businesses is operated under the control and

management of the trustee during the bankruptcy case. *See Carter*, 220 F.3d at 1254; *Lehal*, 101

F.3d at 276. Other courts have interpreted the §959(a) exception similarly. *See, e.g., Crown

Vantage*, 421 F.3d at 972 (holding that the section 959(a) exception did not apply because "the

Liquidating Trustee was not operating the business previously conducted by the debtor; he was

liquidating the assets of the estate."); *Carter*, 220 F.3d at 1254 (when claims are based on alleged

breaches of fiduciary duty from a trustee's administration and liquidation of the estate, as

opposed to an act of a fiduciary in operating debtor's business, relief from the automatic stay is

necessary); *Lehal*, 101 F.3d at 276 (holding that when the trustee only administered the estate

and did not conduct business, the bankruptcy court's permission is required before suit against

the trustee is filed in state court).

The second exception is that the doctrine only protects the trustee for acts "done in the

trustee's official capacity and within the trustee's authority as an officer of the court." *DeLorean,*

991 F.2d at 1240. Courts have held that *Barton* does not apply in cases in which the trustee

should have, but did not, obtain a court order, or acted beyond the scope of a court order. *See

Leonard v. Vrooman,* 383 F.2d 556, 560 (9th Cir.1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 856,

19 L.Ed.2d 985 (1968) (holding that "a trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court"); *Teton Millwork Sales v. Schlossberg,* No. 07–8091, 2009 WL 323141 (10th Cir. Feb.10, 2009) (finding that a receiver who was authorized by court order to seize the defendant's property held in the name of Teton Millwork Sales, an entity in which the defendant held a 25% interest, could be sued without leave of his appointing court when he seized 100% of the assets of Teton Millwork Sales); *cf. Lurie v. Blackwell,* 211 F.3d 1274 (table of decisions without reported opinions), No. 98-35877, 2000 WL 237966 (9th Cir. March 2, 2000).

Neither exception applies to this proceeding. First, the section 959(a) exception is inapplicable here because the Trustee did not operate a business and the Trustee Defendants were involved only in the administration of the estate. Second, all of the defendants' actions alleged in the Complaint were taken pursuant to, and authorized by, court orders.

Additionally, a party seeking leave of the appointing court to sue a trustee must establish a *prima facie* case against the trustee on the merits. *VistaCare,* 678 F.3d at 232 (quoting *In re Nat'l Molding Co.,* 230 F.2d 69, 71 (3d Cir. 1956)). The *VistaCare* Court also noted that the bankruptcy court has discretion to decide whether to hold a hearing on a party's motion to leave. *VistaCare,* 678 F.3d at 232 n.12. However, there is no controlling law in this Circuit on whether a case filed without leave from the appointing court is void *ab initio* or whether such a jurisdictional defect could be remedied retroactively by obtaining that court's permission to sue. Courts in other jurisdictions have held that leave of the appointing court cannot be rectified after the suit has been filed, because the case is void *ab initio. See, e.g., In re Kids Creek Partners, L.P.,* 248 B.R. 554, 558–59 (Bankr. N.D. Ill. 2000), *aff'd,* Nos. 00 C 4076, 94 B 23947, 2000 WL

1761020 (N.D. Ill. Nov.30, 2000) (the appointing court dismissed the case under the *Barton*

doctrine when plaintiffs requested leave to sue the Trustee only after filing suit in non-appointing

court); *Heavrin v. Schilling (In re Triple S Rests., Inc.)*, 342 B.R. 508, 512 (Bankr. W.D. Ky.

2006) , *aff'd*, 519 F.3d 575 (6th Cir. 2008) (the appointing court dismissed the case under the

*Barton* doctrine because the plaintiff did not seek or obtain leave of that court before filing suit

against the Trustee in state court),; *In re Coastal Plains, Inc.*, 326 B.R. 102 (Bankr. N.D. Tex.

2005) (same).

 Neither should the ultimate removal of the action to this Court cure the initial, errant

filing. Allowing the unauthorized case to proceed would be contrary to the policies that the

*Barton* doctrine is intended to advance. *In re Herrera*, 472 B.R. 839, 853-54 (Bankr. D.N.M.

2012). The *Herrera* Court explained why the *Barton* doctrine required dismissal of an

unauthorized action against a trustee, even after the case was removed to the bankruptcy court:

> Without in any way disparaging the utility of an "it's here now, let's just deal with it"
> approach, the fact is that there are many doctrines that have the effect of punishing the
> unwary, such as filing requirements, statutes of limitations and repose, etc. Despite how
> inefficiently and even unfairly those policies seem to work sometimes, they continue to
> be enforced because they implement major policies deemed to be of overriding
> importance. So here trustees should not face personal liability—both the cost of defense
> and the possibility of a judgment—unless the action has been filed in the first instance in
> the bankruptcy court or there has been a determination by the bankruptcy court that the
> action can be initiated elsewhere.
>
> All problems under the Barton doctrine do not vanish when the unauthorized non-
> bankruptcy court action is removed to bankruptcy court. The trustee should not have to
> expend resources to remove the action to begin with. Nor should the trustee have to file a
> motion to dismiss in the non-bankruptcy forum, educating that court about the Barton
> doctrine and hoping for the correct result. And what if she is not properly served but the
> action proceeds anyway, resulting in liability to her which may be overturned later but is
> still in effect for some period of time. What happens if the trustee is unable to remove the
> action timely? Only by requiring any potential plaintiff to always start in the bankruptcy
> court, either by filing a Barton motion or filing the action itself in the bankruptcy court,
> can the process, and trustees, most consistently be protected.

*Id.*    The instant action should not have been filed in New York state court without first seeking leave of this Court. The *Barton* doctrine is directly applicable to the matter before me; indeed, this situation is precisely what the doctrine seeks to prevent. While the *Barton* doctrine alone provides adequate grounds for dismissal, the Court holds, alternatively, that even if leave of court could apply retroactively, Richardson's Complaint fails to establish a *prima facie* case against the Trustee and will be dismissed for failure to state a claim under Rule 12(b)(6).[10]

## II.  The Rule 12(b)(6) Claims

### A.  *Standard of Review*

Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations and requires a court to evaluate whether the complaint has alleged sufficient factual material to show that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir. 2004); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). But, a court is not required to accept legal conclusions alleged in the complaint. *See, e.g., Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The Third Circuit has set forth a two-

---

[10] The following motions and related filings are therefore resolved or otherwise moot by this decision: The Trustee Defendants' Motion to Enforce (D.I. # 918), joined by WolfBlock (D.I. # 933); Richardson's Objection to Motion for Approval of Settlement (D.I. # 932); Richardson's Objection to Motion to Enjoin Litigation and Cross Motion for Leave to Proceed (D.I. # 938); and WolfBlock's Objection to Richardson's Cross Motion (D.I. # 954).

part analysis for deciding a 12(b)(6) motion to dismiss in light of the *Twombly* and *Iqbal* standards:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations and citations omitted).

To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (internal citations and quotations omitted). While a detailed statement of facts is not necessary…the plaintiff must provide "more than labels and conclusions…a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Construing the Complaint in the light most favorable to the plaintiff and accepting all well-pleaded facts as true, this Court will grant the Defendants' 12(b)(6) motion to dismiss.

   B.   *The Injunction and Release Provisions of the Confirmed Plan*

"A final order of confirmation terminates all rights of holders of claims and interests except as otherwise provided in the plan or the order confirming the plan". 8 *Collier on Bankruptcy* ¶ 1141.02 (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2011); *see also First Union Commercial Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.,*

*Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("Pursuant to 11 U.S.C. § 1141(a), all parties are bound by the terms of a confirmed plan of reorganization.").

The Confirmed Plan and Confirmation Order explicitly released all pre-confirmation claims and enjoined any actions premised on a claim subject to that release. *See* Confirmation Order, ¶¶ 6(b) [release], 6(d) [injunction]; Confirmed Plan, §§ 6.12 [mutual release], 6.14 [injunction]. In particular, as the former chairperson of the Committee, Richardson is bound by the terms of the Mutual Release between the Creditors' Committee and the Chapter 11 Trustee (and their respective attorneys and advisors, etc.) in Section 6.12 of the Confirmed Plan. Additionally, the Plan and Order contain a clause for the exculpation and indemnification of the Trustee for acts taken in his official capacity. While Richardson points out that the clause contains an exception for acts "undertaken in bad faith, gross negligence, or willful misconduct," he has failed to demonstrate any plausible factual basis for his allegations. The Complaint's allegations against WolfBlock are based on conduct that occurred prior to the confirmation of the Plan and are, therefore, subject to the release and injunction provisions of the Confirmation Order and Confirmed Plan. Similarly, all of the Trustee Defendants' conduct – with the exception of actions related to the Gray Settlement Agreement – is alleged to have occurred prior to the confirmation of the Plan. Therefore, all claims (except those regarding the Gray Settlement Agreement) are precluded by the injunction and release provisions and will be dismissed.

C.   *Claim and Issue Preclusion*

The claims set forth in the Complaint are precluded by the doctrines of res judicata and collateral estoppel, or claim and issue preclusion. "Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). "The prerequisites for the application of issue

21

preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.,* 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting *In re Graham,* 973 F.2d 1089, 1097 (3d Cir.1992)); *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Similarly, "[c]laim preclusion, formerly referred to as res judicata, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Bd. of Trs. of Trucking Emps. of New Jersey Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir.1992); *see also In re Cont'l Airlines*, 203 F.3d 203, 208 (3d Cir. 2000).

All of Richardson's claims were either asserted as objections during the main bankruptcy case and explicitly rejected by the Court, or directly related to motions approved by the Court after hearings for which he was present, but did not object. "The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *Katchen v. Landy,* 382 U.S. 323, 334 (1966). In particular:

Count I against the Trustee Defendants regarding the inadequate sale prices:  both Rivco and Jenkins (Chariot's operating companies) were sold pursuant to court orders, after hearings at which Richardson was present. In the Rivco Sale hearing, Richardson's objections that the price was too low and that the sale was unnecessary were overruled. The Court issued a Memorandum

Opinion (the Rivco Sale Opinion) addressing Richardson's points and explaining why it had

ruled for the Trustee:

> [Richardson] asserts that RHC's offer is not the . . . best offer and is not in the best
> interest of the Debtor's estate….Debtor's exercise of its shareholder power to approve the
> Sale reflects sound business judgment. The Debtor does not conduct any business
> operations. Its only marketable assets consist of its 92% stock interest in each of Rivco
> and Jenkins, its two operating subsidiaries. In order to maximize distributions to its
> creditors, the assets of Rivco (and Jenkins) must be sold as efficiently as possible. As
> such, the Sale represents a prudent and favorable opportunity to improve Debtor's
> liquidity and maximize the potential for creditor recoveries.

Rivco Sale Opinion, at 1, 6. Richardson was present at the Jenkins hearing, but did not file an

objection. In his current Complaint, Richardson rehashes the same points.

Count II against the Trustee Defendants regarding excess payments to governmental

agencies: The Confirmation Order and Confirmed Plan designated distribution to the government

agencies. This issue was previously discussed and disposed of in the Confirmation Hearings, at

which Richardson was present.

Counts III and V against the Trustee Defendants regarding the Gray Settlement

Agreement:   Richardson filed an objection to the Gray Settlement Agreement.  This Court

applied the *Martin* factors and determined that the proposed settlement was sufficient, overruling

Richardson's objection. The Delaware District Court denied Richardson's appeal of the Order

and affirmed this Court's holding: "appellant maintains his position that appellee should have

further pursued collection efforts against Gray, as the probability of success was great, the

difficulty of collection minimal, and the burdens of litigation of no concern (to be borne by an

attorney working on a contingency basis). The record belies these conclusory characterizations,

as held by the bankruptcy court." *Richardson v. Ch.11 Liquidating Tr. (In re Summit Metals,*

*Inc.)*, Civ. No. 09–256–SLR, 2011 WL 1085680, at *2 (D. Del. March 23, 2011), *aff'd*, *In re*

*Summit Metals, Inc.*, No. 11–2112, 2012 WL 1302597 (3d Cir. Apr. 17, 2012).

*D. Immunity*

The Defendants argue that the Complaint should be dismissed because they are entitled to quasi-judicial immunity from claims based upon acts taken in their official capacity as Court-appointed officers.   Quasi-judicial immunity is a defense available for bankruptcy trustees and court-appointed attorneys for the trustee.  *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742 (9th Cir. 2009); *see also LeBlank v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has been full and frank disclosure.").[11]  For derived quasi-judicial immunity to apply, the defendants must satisfy four elements: (1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy court approved their acts. *Harris*, 590 F.3d at 742, citing *Bennett v. Williams*, 892 F.2d 822, 283 (9th Cir. 1989).

Acts complained of in four of the five counts against the Trustee Defendants were taken directly pursuant to a Court Order.  (*See* the discussion in *Claim and Issue Preclusion*, *supra*.: allegations in Count I regarding the sale of Rivco and Jenkins were approved by court order; allegations in Count II regarding excess payments to governmental agencies were approved by the Confirmation Order and the Confirmed Plan (further, distributions to the IRS were approved in a separate order dated March 17, 2005), and allegations in Counts III and V regarding the Gray Settlement Agreement were approved by Order dated March 4, 2009, in which this Court

---

[11] The *Mailman* Court wrote: "We believe that derived judicial immunity in this context is essential to the orderly administration of bankruptcy proceedings. Allowing suits against trustees for executing explicit court orders would run an unacceptably high risk of turning trustees into 'lightning rod[s] for harassing litigation aimed at judicial orders' and would create counterproductive tension between bankruptcy judges and trustees. *Mailman*, 196 F.3d at 8 quoting *Kermit Const. corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976).

found the investigation sufficient.). Moreover, the claims against WolfBlock complain of conduct that (i) occurred while WolfBlock served as counsel to the Creditors' Committee, (ii) was taken with the consent of the Creditors' Committee, and (iii) was approved by orders of this Court.

Because Richardson's Complaint is composed almost entirely of claims stemming from official, Court-approved or Court-ordered actions, the factual allegations in the Complaint do not support a right to relief against the Defendants.

E. *Richardson Lacks Standing to Pursue His Claims*

Richardson lacks standing to sue (1) Womble Carlyle as counsel to the Trustee, (2) WolfBlock as counsel to the Committee, or (3) on behalf of the Summit bankruptcy estate. First, Richardson cannot bring suit against Womble Carlyle in its official capacity as Trustee's counsel, because only the Trustee has the authority to do so. *See In re Cont'l Coin Corp.*, 380 B.R. 1, 16 (Bankr. C.D. Cal. 2007), *aff'd*, No. CV 08-0093(PA), 2009 WL 2589635 (C.D. Cal. Aug. 21, 2009) (holding that the "trustee's attorney in this case does not owe a statutory or fiduciary duty to the creditors of the estate. The attorney's duties are to the trustee.") (quoting *Wolf v. Kupetz (In re Wolf & Vine, Inc.)*, 118 B.R. 761, 771 (Bankr. C.D. Cal. 1990) (noting that while a trustee owes a fiduciary duty to creditors, the attorneys for the trustee do not)).

Second, Richardson cannot bring suit against WolfBlock because there was no legal relationship between Richardson as an individual and WolfBlock. As Counsel for the Committee, WolfBlock represented the Committee as an entity and, thus, its duty is to the Committee as a whole, not to individual members. *See Picciotto v. Schreiber*, 260 B.R. 242, 245 (D. Mass. 2001) (holding that counsel for the committee owes no fiduciary duty to any specific unsecured creditor).

Third, Richardson cannot bring claims on behalf of the Summit bankruptcy estate

because he lacks derivative standing. *Official Comm. of Unsecured Creditors of Cybergenics*

*Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003); *see also In re Davis*,

312 B.R. 681, 685 (Bankr. D. Nev. 2004) ("Absent authorization by the bankruptcy court, the

Trustee is the only party who can assert a claim for damages on behalf of the bankruptcy

estate."). [12] In order to bring claims on behalf of the estate, Richardson (or any other party) must

first receive permission from the Court, which he did not. Had Richardson made such a request,

it would have been denied, on this record, for failure to demonstrate entitlement to such relief.

Therefore, Richardson lacks standing to pursue the claims in his Complaint.

F.  *The New York Judiciary Law Is Inapplicable*

Lastly, the Complaint is premised on an inapplicable statute. The Second Circuit has held

explicitly that the New York Judiciary Act applies only to conduct of proceedings that take place

within the territorial boundaries of the State of New York. The controlling case is *Schertenleib v.*

*Traum*, 589 F.2d 1156 (2d Cir. 1978), in which the Court was explicit about the territorial

limitations of the Act:

> No one questions the power of the State of New York to impose disciplinary sanctions
> against New York attorneys for acts occurring outside the state that are deemed to render
> them unfit to practice inside the state. See, e. g., *In the Matter of Richard M. Nixon, An*
> *Attorney*, 53 A.D.2d 178, 385 N.Y.S.2d 305 (1st Dept. 1976). However, **we believe that**
> **section 487 is not an exercise of that power, but is rather intended to regulate,**
> **through criminal and civil sanctions, the conduct of litigation before the New York**
> **courts.** We doubt it was the purpose of the New York State legislature to fasten on its
> attorneys' criminal liability and punitive damages for acts occurring outside the state. It
> seems more likely that the concern is for the integrity of the truth-seeking processes of
> the New York courts, not for injury to foreign litigants. Should conduct beyond the state's

---

[12] The *Cybergenics* Court agreed with the derivative standing requirements of the Second and Seventh Circuits,
which generally require "(1) a colorable claim; (2) that the trustee unjustifiably refused to pursue the claim; and (3)
permission of the bankruptcy court to initiate the action." *In re Centaur, LLC*, No. 10–10799 (KJC), 2010 WL
4624910, at *4 (Bankr. D. Del. Nov. 5, 2010) (citing *In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004)).

borders expose an attorney as unfit to practice in New York, the State has enacted ample statutory authority, apart from section 487, to protect itself.

*Id.* at 1166 (emphasis added). Only one case departs from the narrow *Schertenleib* holding: in

*Cinao v. Reers*, 893 N.Y.S.2d 851 (N.Y. Sup. Ct. 2010), the court held that the Act could reach

the conduct of New York attorneys in out –of-state proceedings. The *Cinao* holding quickly

drew a sharp rebuke from the District Court in the Southern District of New York, which

rejected it as an "aberration." *Kaye Scholer LLP v. CAN Holdings, Inc.*, No. 08 Civ. 5547(NRB),

2010 WL 1779917, at *1 (S.D.N.Y. Apr. 28, 2010).

The Complaint does not allege that the Defendants' acts occurred within the state of New

York, or even within a New York proceeding. As the Second Circuit has narrowly interpreted the

New York Judiciary Act to allow only claims involving proceedings within New York, it is

inapplicable to this proceeding in which all actions complained of occurred in the State of

Delaware.

## CONCLUSION

For the reasons listed above, the Court will grant Defendants' Motions to Dismiss.  In

sum, the Complaint is void *ab initio* for violation of the *Barton* doctrine and will be dismissed

for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Additionally, the Complaint

fails to meet the pleading standards necessary to withstand a Rule 12(b)(6) motion to dismiss.

Even after accepting all well-pleaded allegations as true and in the light most favorable to the

plaintiff, the Complaint lacks any factual support for the claims of deceit and collusion.

Leave to amend the Complaint is denied since Richardson has failed to provide specific

information regarding how he could amend the Complaint as to comply with the applicable

pleading requirements. *See Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 881 (1st

Cir.1991) (upholding the district court's dismissal of a complaint without granting leave to amend because "[e]ven at oral argument before this court, plaintiff failed to indicate specifically how he would amend the complaint so as to comply with Rule 9(b).").

An appropriate Order follows.

FOR THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

Dated:  August 27, 2012